MARK ANCHOR ALBERT & ASSOCIATES
MARK ANCHOR ALBERT, State Bar No. 137027
  *albert@lalitigators.com*
JASON T. RIDDICK, State Bar No. 235980
  *riddick@lalitigators.com*
800 W. 6th Street, Suite 1220
Los Angeles, California 90017
Telephone: (213) 699-1355
Facsimile: (213) 699-1354

Attorneys for Plaintiff TIMOTHY D. LYKINS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY D. LYKINS, an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF RE: THE CONSTITUTIONALITY OF THE PRESIDENTIAL TAX TRANSPARENCY AND ACCOUNTABILITY ACT** |
| v. | |
| GAVIN CHRISTOPHER NEWSOM, in his official capacity as Governor of the State of California; and ALEX PADILLA, in his official capacity as the Secretary of State of the State of California, | [VIOLATIONS OF THE 1ST AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION UNDER 28 U.S.C. § 1983] |
| Defendants. | |

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    JURISDICTION AND VENUE ......................................................... 3

III.   PARTIES ........................................................................................... 4

IV.   ARTICLE III STANDING ................................................................ 4

V.    THE KEY CONSTITUTIONAL PROVISIONS AT ISSUE ........... 5

    A.    The First Amendment ............................................................. 5

    B.    The Fourteenth Amendment ................................................... 5

    C.    The Presidential Qualifications Clause ................................... 6

    D.    The Presidential Elections Clause ........................................... 6

VI.   THE POLITICAL AND LEGISLATIVE BACKGROUND ............. 6

    A.    Concise History of the Disclosure of Presidential Tax Returns ............ 6

    B.    Concise History Of The Genesis of The California Trump Ballot Act .......... 7

    C.    The Provisions Of The Trump Ballot Act ............................. 10

        1.    The Act Requires Production Of Presidential Primary Candidates' Tax Returns In Order To Obtain Ballot Access ...... 10

        2.    The Act Supposedly Is Predicated On A Compelling State Need For Primary Voters To Obtain Presidential Candidate Tax Information ........................................... 11

VII.  CONCISE SUMMARY OF THE REASONS WHY THE TRUMP BALLOT ACT IS UNCONSTITUTIONAL ................................. 12

VIII. CLAIM FOR RELIEF (FOR A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983) ................................................................................... 17

IX.   PRAYER ......................................................................................... 18



MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

# I.     INTRODUCTION

1.     No right is more precious in our constitutional republic than the right to vote for the most powerful person in the nation, and perhaps the world:  the President of the United States.  A citizen's constitutional voting and associational rights, which are the bedrock of our representative democracy, include the right to cast a meaningful vote at all stages of the electoral process – including state presidential primary elections.  These fundamental voting and associational rights are all the more important in the context of a presidential primary, since only the President and Vice-President of the United States are elected nationwide. The state-by-state election of the United States President impacts a uniquely-important <u>national</u> interest because votes for that national office are interrelated with votes for the office by voters in other states around the county.  A state presidential primary election campaign is an essential platform for the expression of views on contested national policy issues of the day.  A presidential primary candidate serves as a rallying-point for like-minded citizens to associate together for their joint expression of their political views.  Accordingly, a state ballot access law that imposes eligibility requirements upon  a presidential candidate for a state primary election implicates fundemantal constitutional rights of primary voters.

2.     In violation of these fundamental rights – to vote and to associate with other voters and their supporters – effective July 30, 2019, the Democratic Party supermajority in the California state Legislature and Executive Branch abused their power by implementing SB 27, the so-called *Presidential Tax Transparency and Accountability Act*, which adds Section 6880 *et seq.* to the California Elections Code (the "Trump Ballot Act").  The Trump Ballot Act purports to require President Donald Trump to turn over his tax returns from the last five years for public disclosure, or be delisted from Republican Party primary ballots in advance of the 2020 presidential election.

3.     The Democratic-dominated California state Government attempts to mask its invidious partisan purpose via pretextual reasons, couching its anti-Trump and anti-Republican primary ballot legislation as requiring "voter information" supposedly essential in the public interest, regardless of political affiliation.

4.     But the Trump Ballot Act is not an "even handed," "neutral," or "unbiased" statutory vehicle to obtain important information voters might need to assess presidential candidates in pre-election primaries.  The superficial appearance of uniform application to primary candidates from all eligible political parties is a ruse.  By imposing an unconstitutional condition impacting the primary ballot access of the incumbent President of the United States, the Trump Ballot Act's true intent and purpose is to suppress the vote of Trump supporters in California, up and down the line, effectively disenfranchising them in the 2020 presidential primary election.

5.     That naked abuse of political power, to suppress minority-party voting rights, should concern not only Republicans, but also Democrats, Green Party members, progressives, libertarians, Independents, and liberals.  The right of ordinary citizens to vote and associate with their fellow citizens under the First and Fourteenth Amendments to the United States Constitution cannot be abridged by whichever party happens to control the states's legislature and executive branches, in order to manipulate the minority party's primary election process and outcome.

6.     In addition, the Trump Ballot Act contains an "urgency" clause and enacts Elections Code § 6883, which requires President Trump to produce his tax returns not later than 98 days before the March 3, 2020 primary.  That date is fast approaching: November 26, 2019. (*See* http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB27).

7.     Consequently, the "urgent" Trump Ballot Act, in conjunction with the California Legislature's recent enactment of SB 568 (the "Prime Time Primary Act," Cal. Elections Code §§ 316 *et seq.*), which advanced California's presidential primary election date three months, to super-Tuesday, March 20, 2020, imposes

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

unreasonably exigent timing pressures on voters whose constitutional rights are violated to seek to overturn the partisan Trump Ballot Act.

8.    Remedying this unconstitutonal and undue burden imposed on the minority party's  primary operations and primary voting rights is the purpose of this lawsuit.

9.    As elaborated below, the Court should enjoin the California Secretary of State and the State of California from implementing the Trump Ballot Act, and enter a declaratory judgment that it is unconstitutional.   The Trump Ballot Act imposes an undue burden on the voting and associational rights of Republican primary voters (approximately 25% of California registered voters) in relation to the supposedly "neutral" state interests it advances.  Plaintiff should be awarded his reasonable attorneys' fees under 28 U.S.C. § 1983.

## II.    JURISDICTION AND VENUE

10.    This case arises under the United States Constitution and the laws of the United States and the State of California.  This case presents federal questions within this Court's jurisdiction under Article III, Section 2 of the United States Constitution, the Presidential Elections Clause and the Presidential Qualifications Clause of Article II, Section 1 of the Constitution, as well as Plaintiffs' voting and associational rights, and due process rights, under the First and Fourteenth Amendments to the Constitution.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper in the Western Division of the Central District of California under 28 U.S.C. § 1391, because Plaintiff resides here and a substantial part of the events or omissions giving rise to the constitutional claims asserted in this Complaint occurred in this District.

/ / /

/ / /

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

### III.    PARTIES

12.    Plaintiff Timothy D. Lykins is a resident of the City and County of Los Angeles,  within the Western Division of this District, and he is a citizen of the State of California, a taxpayer, a voter, and a registered Republican.

13.    Defendant Gavin Christopher Newsom ("Governor Newsom"), in his official capacity as the Governor of the State of California, is charged with the execution of California law, including but not limited to its election laws.

14.    Defendant Alex Padilla ("Secretary Padilla"), in his official capacity as the Secretary of State of California, is the supervisor and director of all election matters in California.  Secretary Padilla has duties to oversee the election laws of California so as to ensure compliance with the United States Constitution and applicable law.

### IV.    ARTICLE III STANDING

15.    As a California resident and Republican primary voter, Mr. Lykins has standing to challenge the constitutionality of the Trump Ballot Act because the impact of candidate eligibility requirements on him (and other voters) implicates basic constitutional rights.  Mr. Lykins' right, as a citizen, to vote free from arbitrary impairment by state action is judicially recognized as a constitutional right under the First and Fourteenth Amendments.  Ballot access restrictions, like those imposed by the Trump Ballot Act, impact the constitutionally-protected expressive and associational interests of Mr. Lykins and other like-minded voters who choose to associate together to express their support for a particular Presidential primary candidate – here, the incumbent President of the United States – because of the views he espouses and public policies he promotes.

16.    Mr. Lykins and other California voters have a right to choose among candidates placed on their political party's primary ballot without unconstitutional exclusions or restrictions imposed by the dominant opposing party which controls the levers of government power.  Accordingly, Mr. Lykins (and each other similarly

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

situated voter) suffers an Article III injury in fact when a Presidential candidate whom he supports is prevented from appearing on a ballot due to a pretextual ballot access condition based on thinly-disguised, invidious, and partisan motives.

## V.    THE KEY CONSTITUTIONAL PROVISIONS AT ISSUE

### A.    The First Amendment

17.    The First Amendment to the United States Constitution provides as follows:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

(U.S. Const., Amend. 1.)

### B.    The Fourteenth Amendment

18.    The Fourteenth Amendment to the United States Constitution, often referred to as the "Due Process Clause," provides in pertinent part as follows:

> Sec. 1. [Citizens of the United States.] All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> *       *       *
>
> Sec. 5. [Power to enforce amendment.] The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

(U.S. Const., Amend. 14, §§ 1 & 5.)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

C.    **The Presidential Qualifications Clause**

19.    The Framers of the United States Constitution endeavored to make sure that only loyal, mature persons could be elected President of the United States.  To ensure this, they mandated in Article II, Section1, clause 5 of our Constitution three – and only three – requirements for the Presidency, focusing on a candidate's age, residency, and citizenship (the "Presidential Qualifications Clause"):

> "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States."

(U.S. Const., art. II, § 1, cl. 5.)

D.    **The Presidential Elections Clause**

20.    The U.S. Constitution does not allow for the direct, popular vote by the people of the respective states for candidates for President of the United States. Instead, the Constitution establishes a mechanism for the election of a candidate for President from each respective state through the appointment of "electors" to the Electoral College (the "Presidential Elections Clause"):

> [t]he executive Power shall be vested in a President of the United States of America. He [sic] shall… be elected, as follows… Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress…"

(U.S. Const., art. II, § 1, para. 1-2.)

## VI.    THE POLITICAL AND LEGISLATIVE BACKGROUND

A.    **Concise History of the Disclosure of Presidential Tax Returns**

21.    There is no doubt that President Trump has proven to be a controversial President.  Concurrent with the Russian-collusion investigations, Democratic

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

representatives at the state and national levels have also launched numerous investigations and lawsuits seeking to force President Trump to turn over his federal tax returns. There is no federal statute expressly requiring that Presidential candidates disclose their tax returns to gain access to the ballot, whether in state or federal elections. Congress has had ample opportunity to consider passage of such a requirement, and has declined to do so.

22. Instead, most Presidents since 1973, when President Richard Nixon was in office, have <u>voluntarily</u> turned over their tax returns. Notably, in 1976, President Gerald Ford did not do so, opting instead to release a summary of his tax return. Then, during the 2016 presidential campaign, Donald Trump departed from this purely voluntary practice, declining to release his tax returns. He presently is fighting multiple lawsuits in several federal courts to prevent his tax returns from being turned over and made public, under 26 U.S.C. § 6103(f) and otherwise. Mr. Trump, like all American citizens, retains the right of privacy with respect to his tax returns, and there is no federal statute depriving him of that right. He complies, as must all Presidential candidates, with federal election financial disclosure laws.

**B. Concise History Of The Genesis of The California Trump Ballot Act**

23. A virtually identical version of the Trump Ballot Act – SB 149 – was vetoed by former California Governor Jerry Brown, who stated as follows:

"To the Members of the California State Senate:

I am returning Senate Act 149 without my signature.

This bill requires any candidate for president to disclose five years of his or her income tax returns before their name can be placed on California's primary election ballot.

Although tax returns are by law confidential, many presidential candidates have voluntarily released them. This bill is a response to President Trump's refusal to release his returns during the last election.

While I recognize the political attractiveness-even the merits-of

getting President Trump's tax returns, I worry about the political perils of individual states seeking to regulate presidential elections in this manner. First, it may not be constitutional. Second, it sets a "slippery slope" precedent. Today we require tax returns, but what would be next? Five years of health records? A certified birth certificate? High school report cards? And will these requirements vary depending on which political party is in power?

A qualified candidate's ability to appear on the ballot is fundamental to our democratic system. For that reason, I hesitate to start down a road that well might lead to an ever escalating set of differing state requirements for presidential candidates.

Sincerely,

Edmund G. Brown Jr."

(http://leginfo.legislature.ca.gov/faces/billStatusClient.xhtml?bill_id=201720180SB149.)

24.    Indeed, Defendant State of California's own Office of the Legislative Counsel concluded that SB 149 (the predececessor version of SB 27) would be unconstitutional if enacted.  (Ops. Cal. Legis. Counsel, No. 1718407 (Sept. 7, 2017) Presidential Qualifications: Tax Return Disclosure.)   That legal opinion has since "become unavailable" and is unavailable either on the Legislative Counsel's website or the California Legislature's bill status page, despite the State of California's general practice of preserving public records and providing access to such records online.

25.    Both SB 27 and its vetoed predecessor bill, SB 148, admit that their primary purpose and intent is to target President Trump individually and force him to publicly disclose his tax returns:

Stated need for the bill

According to the author:

1    Throughout his campaign, President Donald Trump refused
2    to release his tax returns even as his Republican,
3    Democratic and third-party opponents did so.

4

5    Releasing tax returns to the public is a long held tradition
6    by all major party Presidential candidates in the modern
7    era. This practice assured the public that all potential
8    Presidential candidates were complying with the
9    emoluments clause.

10

11    The American public deserves to know that the individual
12    they are selecting to be president will have their best
13    interest at the heart of every decision, not the best interests
14    of any business venture or investment fund. Transparency
15    is a non-partisan issue.

16

17    There are pressing questions for voters to have answered
18    before an election, because unlike members of Congress
19    and federal appointees, presidents are largely exempt from
20    conflict-of-interest
21    laws.

22

23    Voters not only deserve full disclosure  of their future
24    leader's tax
25    returns, they should be entitled to them.
26    (*See* file:///C:/Users/ma/Downloads/201720180SB149_Senate%20Judiciary_.pdf
27    26.    The comments at page 5 of the bill analysis of SB 27 dated March 15,
28    2019 by  Senate Elections And Constitutional Amendments Committee contains the

9

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

1   identical statement by the SB 27's author.   (*See*

2   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200S

3   B27.)

4         **C.**     **The Provisions Of The Trump Ballot Act**

5         **1.**     **The Act Requires Production Of Presidential Primary**

6             **Candidates' Tax Returns In Order To Obtain Ballot Access**

7       27.    The Trump Ballot Act amends certain provisions of the California

8   Elections Code governing the criteria and conditions by which candidates' names

9   appear on the presidential primary ballot.  Pursuant to the Act, Presidential

10  candidates would have to submit copies of their federal income tax returns for the

11  five most recent taxable years to the California Secretary of State's Office in addition

12  to meeting all other ballot access requirements.  The Act provides that the Secretary

13  of State shall not print the name of a candidate for President of the United States on a

14  primary election ballot unless the candidate, within a reasonable time frame

15  established by the Secretary of State, files with the Secretary of State  a copy of

16  every income tax return the candidate filed with the Internal Revenue Service (IRS)

17  in the five most recent taxable years. After redacting the returns for privacy purposes,

18  the Secretary of State would make the returns available to the public through its

19  website.  Presidential primary candidates could refuse to submit their tax returns, but

20  would then have to proceed only on a write-in basis – they would be excluded from

21  the printed ballot and thus effectively precluded from prevailing in the primary.

22      28.    The Act defines "income tax return" as any tax or information return,

23  declaration of estimated tax, or claim for refund required by, or provided for or

24  permitted under, the provisions of the Internal Revenue Code, and that is filed on

25  behalf of, or with respect to any person, and any amendment or supplement thereto,

26  including supporting schedules, attachments, or lists that are supplemental to, or part

27  of, the filed return.

28

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

29.     If the candidate has not filed an income tax return with the IRS for the tax year immediately preceding the primary election, the candidate shall submit a copy of the income tax return to the Secretary of State within five days of filing the return with the IRS.   The tax return production requirement does not apply to any year in which the presidential primary candidate was not required to file an income tax return with the IRS.

30.     Finally, the Act requires the Secretary of State to adopt implementing regulations, and contains an "urgency clause."

(*See* http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB27)

## 2.     The Act Supposedly Is Predicated On A Compelling State Need For Primary Voters To Obtain Presidential Candidate Tax Information

31.     In enacting the Trump Ballot Action, the bill states, in pertinent part, that the Legislature finds and declares all of the following:

a)     The State of California has a strong interest in ensuring that its voters make informed, educated choices in the voting booth, and to this end, the state has mandated that extensive amounts of information be provided to voters, including county and state voter information guides;

b)     A presidential candidate's income tax returns provide voters with essential information regarding the candidate's potential conflicts of interest, business dealings, financial status, and charitable donations; therefore, the information in tax returns helps voters to make a more informed decision;

c)     As one of the largest centers of economic activity in the world, the State of California has a special interest in the President refraining from corrupt or  self-enriching behaviors while in office and the people of California can better estimate the risks of any given Presidential candidate

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

1  engaging in corruption or the appearance of corruption if they have access

2  to candidates' tax returns;

3  d)      The State of California has an interest in ensuring that any

4  violations of the Foreign Emoluments Clause of the U. S. Constitution or

5  statutory prohibitions on behavior such as insider trading are detected and

6  punished and mandated disclosure of Presidential candidates' tax returns

7  will enable enforcement of the laws against whichever candidate is elected

8  President; and

9  e) compliance costs with this requirement will be trivial.

10 **VII.   CONCISE SUMMARY OF THE REASONS WHY THE TRUMP**

11 **BALLOT ACT IS UNCONSTITUTIONAL**

12 32.      As stated at the outset, the right to vote is a uniquely precious

13 constituional right.   *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966).

14 It is "protective of all fundamental rights and privileges."  *Evans v. Cornman*, 398

15 U.S. 419, 422 (1970).  Free speech rights, especially during a political campaign, are

16 also fundamental rights.  *See, e.g., Gitlow v. New York*, 268 U.S. 652, 666 (1925);

17 *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184

18 (1979) ("Restrictions on access to the ballot burden two distinct and fundamental

19 rights, the right of individuals to associate for the advancement of political beliefs,

20 and the right of qualified voters, regardless of their political persuasion, to cast their

21 votes effectively") (internal quotation marks omitted); *see also Citizens United v.*

22 *Fed. Elec. Comm'n*, 558 U.S. 310 at 339 (2010) ("The First Amendment has its

23 fullest and most urgent application to speech uttered during a campaign for political

24 office") (internal citations and quotation marks omitted); *Ariz. Libertarian Party v.*

25 *Reagan*, 798 F.3d 723, 728-29 (9th Cir. 2015).

26 33.      By this federal § 1983 constitutional lawsuit, a California voter and

27 taxpayer, and registered Republican (Mr. Lykins), challenges the constitutionality of

28 the Trump Ballot Act on the ground that its tax return production requirement

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

1  constitutes an impermissible state-imposed condition for the eligibility of

2  Presidential candidates in violation of the Qualifications Clause of the United States

3  Constitution (art. I, § 2, cl. 2), which on its face provides only three such conditions

4  (age of 35, natural-born citizen, 14 years continuous residency in the United States).

5  Additionally, the Trump Ballot Act impermissibly interferes with the minority party's

6  Presidential primary election and process, and also unreasonably restricts Mr. Lykins'

7  right to vote and to associate with other like-minded voters in Republican

8  presidential primaries, in violation of the First and Fourteenth Amendments to the

9  United States Constitution, and his rights under 28 U.S.C. § 1983.

10      34.    Assuming, *arguendo*, that the <u>Anderson/Burdick</u> balancing test applies

11  to the primary ballot access conditions imposed by the Trump Ballot Act (<u>Anderson</u>

12  <u>v. Celebrezze</u>, 460 U.S. 780 (1983), and <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992),

13  Plaintiff alleges that the magnitude of the burden imposed on Republican primary

14  voters (and non-Republican voters who may wish to register as Republicans)

15  substantially outweighs California's purported justifications for the law,  moving the

16  needle towards a strict scrutiny evaluation of the Trump Ballot Act and its

17  invalidation on constitutional grounds.

18      35.    The Trump Ballot Act does not impose only "reasonable,

19  nondiscriminatory restrictions" upon the First and Fourteenth Amendment Rights of

20  voters.  Instead, unless President Trump turns over his tax returns for the last five

21  years in the next four months (by November 26, 2019), nearly five million California

22  citizens and voters who are registered with the Republican Party will be effectively

23  disenfranchised from voting in the presidential primary for the incumbent President

24  of the  United States.  According to official voter registration statistics published by

25  Secretary Padilla, as of February 10, 2019 (the most recent reporting date) there were

26  8,612,368 registered Democratic voters in California (43.1%) and 4,709,851

27  registered Republican voters (23.6%).  (*See* https://elections.cdn.sos.ca.gov/ror/ror-

28  odd-year-2019/historical-reg-stats.pdf.)

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

36.    The purported informational benefits that supposedly would accrue to

voters  from the production of tax returns from presidential candidates, as opposed to

the information already available from other sources, including the candidates'

federal election financial disclosures, pales in comparison to the profound harm that

would be suffered by nearly 5 million Republican voters whose preferred presidential

candidate – the incumbent President of the United States –  would be excluded from

their own party's primary Presidential electon ballot.  This out-of-skew imbalance of

"harms and benefits" is underscored by the fact that voters who are concerned about

the failure of President Trump, or any other Presidential candidate, to disclose their

tax returns. have a simple and effective remedy:  DON'T VOTE FOR HIM OR HER.

37.    President Trump has made abundantly clear he will not voluntarily

disclose his confidential tax returns to the public.  So the purported state interest in

obtaining his tax return information (to detect conflicts of interests, or violations of

the Emoluments Clause, etc.) is a red herring.  Its true goal is not to gather additional

presidential candidate tax return information, but rather to harm the President and his

2020 reelection prospects, and to punish him and his supporters in California by in

effect canceling their presidential primary.  In this way, the Trump Ballot Act

impermissibly interferes with the ability of Mr. Lykins and other Republican primary

voters to promote the Presidential nominee of their choice by hampering Republican

party decision-making in their own Presidential primary.

38.    Additionally, Plaintiff alleges that the Qualifications Clause of the

United States Constitution imposes only three requirements for presidential

candidates:  (1) he or she must be a natural born Citizen, (2) he or she must be at

least 35 years old, and (3) he or she must have resided in the United Stated for at

least fourteen years.  Where does that leave room for individual state legislatures to

impose a fourth requirement?  Or a fifth?  The State of California has no lawful

authority to impose additional qualifications on a candidate for the office of

President of the United States beyond those qualifications set forth in the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Qualifications Clause (U.S. Const., art. II, § 1, para. 5).

2        39.    Defendants contend that the tax return production requirement for

3    primary ballot access by Presidential candidates is a reasonable procedural regulation

4    of the electoral process permitted under the Presidential Elections Clause (U.S.

5    Const., art. II, § 1, para. 1-2) and applicable law.   However, this ballot access law, if

6    allowed to stand, would open the floodgates for California and 49 other states to

7    impose additional "informational" primary ballet access restrictions that would

8    impact the national electoral process, beyond their individual states.  If the reasoning

9    and purported justification by the California Legislature were correct and sufficient,

10   then by the same reasoning California or any of the 49 other states could prohibit

11   primary ballot access to Presidential candidates unless they produced their

12   confidential medical records, psychiatric and therapist records, academic records,

13   criminal records, family law records, or driving records.  The conceivable list of

14   "relevant" or "critical" information as a justification for denial of ballet access would

15   have no limit, and state legislatures throughout the country would be able to impose

16   limits on Presidential candidates based on naked political considerations as

17   California has done in passing the Trump Ballot Act.

18       40.    Allowing individual states to adopt their own qualifications for

19   Presidential primary candidates for inclusion on Presidential primary ballots is

20   inconsistent with the Framers' requirements for uniform standards for the

21   qualifications of Presidential candidates, under the Presidential Qualifications Clause

22   of the United States Constitution.  If the qualifications set forth in the text of the

23   Constitution are to be changed, that text must be amended; it cannot be done under

24   the guise of reasonable procedural requirements for state elections under the

25   Presidential Elections Clause  (U.S. Const., art. II, § 1, para. 1-2).

26       41.    The Trump Ballot Act is a state-imposed ballot access restriction that

27   unconstitutionally promotes the twin goals of disadvantaging a particular class of

28   candidates and voters – the minority party of Republicans in California – while

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

evading the dictates of the Qualifications Clause.  The Trump Ballot Act is not an even-handed and fair law designed to increase voter information.  The "applies to all" justification is wholly pretextual.  The Trump Ballot Act has been imposed by the super-majority, Democrat-dominated Legislature and the "progressive " Democratic Governor, Gavin Newsom, in order to target and harm President Trump and his supporters in California.  (The prior governor, Jerry Brown, recognized the  flaws in a substantively identical 2017 law passed by the legislature, and vetoed it.)  These government actors have specifically targeted this statute to disadvantage President Donald Trump and his millions of supporters in this State, in order to suppress Republican and conservative voter interest and intensity by eliminating President Trump from the primary election process, and thereby stifle voter enthusiasm for Republican candidates down-ballot for other state and local offices.

42.    This case is about hyper-partisan government abuse of power in order to discourage the minority, opposing party's members and other conservative and independent supporters of the President, not just in the 2020 Presidential primary election, but in state and local elections also.  If President Trump is excluded from the primary ballot, voters will be discouraged from participating in the primary election process at all, and likely from voting for candidates down-ballot.

43.    California – effectively a one-party state – should not be permitted to impose conditions on Presidential primary contests that may impact other states' primary election procedures and outcomes.  It is all too easy for the supermajority party to impose unreasonable conditions on the other party's primary elections under the pretext that the conditions apply evenly to all political parties.  The Trump Ballot Act seeks to dictate the electoral outcome of the 2020 Presidential primary election, to favor Democrats and disfavor Republicans, and to evade important constitutional restraints under the Qualifications Clause and First and Fourteenth Amendments to the United States Constitution.  It should be declared unconstitutional forthwith, before almost 5 million Republican voters are irreparably harmed.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## VIII.  CLAIM FOR RELIEF (FOR A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983)

44.     Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

45.     Plaintiff seeks a declaration by this Court under 28 U.S.C. §§ 2201 and 2202 that the Trump Ballot Act is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.  An actual controversy exists in that Plaintiff contends, and Defendants State of California and Secretary Padilla dispute, that the Trump Ballot Act violates the Presidential Elections Clause (U.S. Const., art. II, § I, para. 1-2) and the Presidential Qualifications Clause (U.S. Const., art. II, § 1, para. 5) by imposing an unconstitutional condition for inclusion on Presidential primary ballots in the State of California.

46.     In so doing, Plaintiff contends, and Defendants dispute, that the Act imposes an undue burden on the voting and associational rights of California citizens who wish to vote for the presidential candidate put forth by their chosen political party, wholly out of proportion to whatever benefits would be derived from increased tax information disclosure by presidential primary candidates; and, further, that the supposedly even-handed application of the tax return disclosure requirement is a pretext designed to mask the invidious partisan goal to suppress Republican voter enthusiasm and turnout in the 2020 Presidential primary election, to intefere with and undermine the primary electoral process, to dampen voter turnout in California and other states, and to depress voters participation in "down-ballot" state and local political contests.

47.     Preliminary and permanent injunctive relief, barring the implementation of the Trump Ballot Act (Cal. Elections Code §§ 6880 *et seq.*), is particularly warranted given the exigent timing requirements the Act imposes, in conjunction

17

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

with the Prime Time Primary Act (Cal. Elections Code §§ 316 *et seq.*). Elections Code § 6883 requires presidential candidates to produce the prior 5 years' of their tax returns not later than 98 days before the March 3, 2020 primary; *i.e.*, not later than November 26, 2019. That is less than four months after the Trump Ballot Act was signed into law. (*See* http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB27). This timing exigency has created inordinant pressure and inconvenience for voters harmed by this partisan legislation to retain counsel, mount a defense, and seek injunctive relief.

## IX. PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

A. Pursuant to 28 U.S.C. §§ 2201 and 2202, enter a declaratory judgment declaring that the Trump Ballot Act violates the First and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiff, as well as the Presidential Elections Clause and the Presidential Qualifications Clause of article II, section 1 of the United States Constitution;

B. Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with theim who receive actual notice of the injunction, from enforcing the Trump Ballot Act;

C. Award Plaintiff the reasonable attorneys' fees, costs, and expenses of this action in accordance with 42 U.S.C. § 1988 and any other applicable authority; and

D. Grant Plaintiff such other relief as this Court may deem just and proper.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

1    DATED:  August 5, 2019              MARK ANCHOR ALBERT & ASSOCIATES

2

3

4                                        By: _____

5                                               Mark Anchor Albert

6                                        Attorneys for Plaintiff TIMOTHY D.
                                                    LYKINS
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

00364263/